Millard L. Midonick, S.
The issue raised by this proceeding concerns the jurisdiction of the Surrogate’s Court. The petition in this proceeding is to revoke letters testamentary, to enjoin the disposition of particular estate assets, to require an accounting for profits procured from the sale of certain assets and to rescind agreements for the sale of assets. The proceeding was initially instituted by the guardian of an infant daughter of the testator. This daughter has now attained tiaajority and the proceeding is being continued by the former infant. An infant son has also been joined.
The petition alleges in part that the petitioning daughter has an interest in the estate by virtue of EPTL 5-3.3, that the testator was a famous painter, that a major portion of the estate consists of paintings executed by him which are of very substantial value and that the executors have entered into agreements for the sale of some paintings and the consignment of others for sale.
The respondents complained of in the proceeding are three individual executors and two corporations, Marlborough Gallery, Inc. and Marlborough A. G. The contracts being challenged were made with these corporations. Paragraph 10 of the petition alleges: “ 10. On information and belief, at and after the times mentioned hereinafter, in addition to acting as one of the [three] Executors, Reis was and still is an executive employee and/or the chief accounting officer of Marlborough Gallery, Marlborough A. G., and other corporations affiliated with them, and he has otherwise had substantial interest in those corporations, both financially and as a matter of personal prestige, and his position and interest in those corporations has been well known to Stamos and Levine. ’ ’
The petition goes on to allege that the agreement to sell the paintings to Marlborough A. G. was at a price which constituted an under-valuation of the paintings and a fraud upon the estate and further that the consignment of paintings to Marlborough Gallery was equally a fraud upon the estate.
*754 Paragraph 14 of the petition alleges: “14. On information and belief, after the issuance of letters testamentary to the Executors, they entered into a conspiracy with Marlborough Gallery and Marlborough A. G. to defraud the Estate of Mark Rothko, Deceased, to waste the assets of that estate and to dispose of the paintings of the decedent belonging to his estate for the sole benefit and profit of the respondents and each of them, and in. pursuance of that conspiracy they engaged in the acts hereinafter set forth.”
At this point in the proceeding the court is not involved with the merits of the controversy inasmuch as the immediate problem concerns only motions by the two corporations to dismiss the petition because of lack of jurisdiction in this court.
Annexed to the motion papers are affidavits alleging that one of the three executors is a certified public accountant employed by Marlborough Gallery and was secretary and treasurer of Marlborough Gallery as well as a director of that company.
Basically the charge of the petition is that this executor, with the knowledge and cooperation of his coexecutors, became involved in a self-dealing situation with corporations of at least one of which he was an officer and director. The contention in the petition is that the executors and the two respondent corporations entered into a conspiracy to defraud the estate through the execution of contracts which were profitable to the contracting parties but financially injurious to the estate.
There is no doubt that, if proved, the allegations of the petition constitute a basis for relief against the respondents. Certainly there can be no serious challenge that with regard to any charge of self-dealing on the part of the executors, or one of the executors with the agreement of his coexecutors, jurisdiction lies in this court to examine the conduct of the executors and, if self-dealing is found, to avoid any contract made by them. “ When the trustee has a selfish interest which may be served, the law does not stop to inquire whether the trustee’s action or failure to act has been unfairly influenced. It stops the inquiry when the relation is disclosed and sets aside the transaction or refuses to enforce it, and in a proper case, surcharges the trustee as for an unauthorized investment.” (City Bank Farmers Trust Co. v. Cannon, 291 N Y 125, 132 [1943]).
Respondents Marlborough Gallery, Inc. and Marlborough A. G. have made a motion to dismiss the petition as to them. They contend that the Surrogate’s Court does not have the requisite subject matter jurisdiction to rescind the contracts made with them by the executors. They cite as authority, Matter *755 of Krabbe (1 Misc 2d 816 [1956]) in which Surrogate Hazletoh held that an action by the Public Administrator to rescind a sale of stock by his predecessor to a third party on the ground that the sale was a fraud on the estate must be brought in the Supreme Court.
It is not clear that the holding in Krabbe was correct in placing such a limited construction on section 40 of the Surrogate’s Court Act; however, since that decision, article VI of the New York State Constitution, which confers jurisdiction on the Surrogate’s Court, has been amended (N. Y. Const., art. VI, § 12, subds. d and e, eff. Sept. 1, 1962), and SCPA has replaced the Surrogate’s Court Act (L. 1966, ch. 953, eff. Sept. 1, 1967). This constitutional amendment and the new statute have broadened and made more explicit the jurisdiction and powers of the Surrogate’s Court. (See Matter of Chusid, 60 Misc 2d 462, 467-468 [1969].)
Subdivision d of section 12 of article VI of the New York Constitution provides that: “ The surrogate’s court shall have jurisdiction over all actions and proceedings relating to the affairs of decedents, probate of wills, administration of estates and actions and proceedings arising thereunder or pertaining thereto * * * and such other actions and proceedings, not within the exclusive jurisdiction of the supreme court, as may be provided by law. ’ ’ The language of the first portion of this subdivision is self-executing. But even if it were not the Legislature has granted to the Surrogate’s Court “ all the jurisdiction conferred upon it by the Constitution of the State of New York” (SCPA 201, subd. 1). Subdivision e of section 12 of article VI of the Constitution states that: “ The surrogate’s court shall exercise such equity jurisdiction as may be provided by law.” SCPA 201 (subd. 2) states that: “ This and any grant of jurisdiction to the court shall be deemed an affirmative exercise of the legislative power under § 12 (e) of article VI of the Constitution and shall in all instances be deemed to include and confer upon the court full equity jurisdiction as to any action, proceeding or other matter over which jurisdiction is or may be conferred.”
Professor David Siegel has explained how this statute operates to insure that the court has full equitable jurisdiction over any matter properly before it. “ Each time such a question arises, subdivision two says, in effect: Never mind that the item is equitable; see whether it relates to the affairs of a decedent or otherwise can be deemed to fall under either of the other two subdivisions [§ 201, subd. 1 or 3]; if it can, it is within the *756 court’s subject matter jurisdiction and, to whatever extent a statute might be deemed necessary to confer jurisdiction of the item because of its equitable character, take subdivision two to be that statute.” (McKinney’s Cons. Laws of N. Y. Practice Commentary to SCPA 201, pp. 44-45). In ruling upon this motion then, we must decide whether contracts for the sale of estate assets, that are alleged to have been fraudulently made by the executors with third parties, relate to the affairs of a decedent, the administration of his estate, or actions and proceedings pertaining to the administration of his estate. If they do then this court has been granted subject matter jurisdiction to hear these matters (N. Y. Const., art. VI, § 12, subd. d; SCPA 201, subd. 1); and having subject matter jurisdiction we also have full power to fashion any equitable remedy necessary to grant such relief as the facts may indicate is warranted (SCPA 201, subd. 2).
In determining the interpretation to be given to the jurisdictional sections of the SCPA it is useful to refer to the legislative history of that statute. The question of jurisdiction was fully considered by the Temporary State Commission on the Modernization, Revision and Simplification of the Law of Estates. The Fifth Report of the Commission, which was before the Legislature in the form of a legislative document when the SCPA was enacted indicates that the SCPA enlarges the jurisdiction of the Surrogate’s Courts so that fragmentary suits can be avoided, and all matters concerning decedent estates can be resolved in the Surrogate’s Court. The report states (p. 62) that: “The jurisdiction and powers of the Surrogate’s Court have been condensed, with the language of the Constitution utilized to insure that the court may determine all matters affecting the estates of decedents and make a complete disposition and thus avoid multiplicity of suits. (201) ” (N. Y. Legis. Doc., 1966, No. 19; Report Nos. 4.4.1A, 5.27A, 7.7B, 8.3.8A, 8.3.9A and 8.3.10A) The Commission Report also reviewed the statutory history of the Surrogate’s Court in one of its appendices. This history also militates against the fragmentation of suits that results when there is a requirement that parties seek relief in a case dealing with a decedent’s estate in another forum. The Report quotes Chief Judge Cabdozo’s opinion in Matter of Raymond v. Davis (248 N. Y. 67, 71, 72) which said that: “ ‘ Concentration of jurisdiction as to decedents’ estates ’ * * # is the purpose clearly revealed in the statutory scheme. ‘ The State has empowered surrogates in unmistakable language, and it is not the function of the courts to discover or *757 to fashion reasons for thwarting the manifest policy. ’ ” It said further: “ ‘ Only by such relief can there be complete justice between the parties without oppressive expense or harrowing delay. ’ ” (N. Y. Legis. Doc., 1966, No. 19, Report No. 4.4.1A, Appendix M-l, p. 1147). The legislative history, then, points toward broad jurisdiction in the Surrogate’s Courts to avoid the expense and delay of multiple suits.
In the recent case of Matter of MacElroy (58 Misc 2d 93 [1968]) Surrogate Bennett of Nassau County, who was the Chairman of the Temporary State Commission on the Law of Estates, gave his view of how far the Surrogate’s Court jurisdiction was expanded by the recent changes in our Constitution and statutes. He said (p. 96): “ In this court’s opinion, all but one obstacle to full and complete jurisdiction was removed by the State Constitution and the statutes recently adopted, so that Surrogates’ Courts in New York may now hear and determine any and all controversies relating to the affairs of decedents. The one area expressly reserved is inter vivos trusts ”.
The MacElroy case dealt with a contract for the sale of stocks owned by the decedent’s estate. The executors, following the directions of the will, sold this stock to a Mr. Bacon at a unit price of $59, which was to be subject to adjustment after the valuation of the stocks for estate tax purposes by the Internal Revenue Service. When the I. R. S. determined the estate tax value of the stock to be $69.95, the executors brought a proceeding in the Surrogate’s Court for a construction of the contract and asking that the Bacon estate (Mr. Bacon had died in the interim) be found liable for the difference in price.
Bacon’s executors made a motion to dismiss, arguing that the court lacked subject matter jurisdiction. Surrogate Bennett dismissed the motion holding that the Surrogate’s Court had jurisdiction “ to hear and to make a complete determination of all questions concerning this controversy as between the two sets of executors ”. (Matter of MacElroy, 58 Misc 2d 93, 96, supra.) He said that (p. 99): “It can be held, with reason and logic, that SOPA 201 in and of itself gives to the Surrogate’s Court jurisdiction 6 as wide as the definition of an action ’ as the Court of Appeals said in People v. Sturtevant ([9 N. Y. 263,] 268), that the court’s jurisdiction as to subject matter covers literally all questions and all matters so long as they relate to the affairs of any decedent.” (Emphasis in original.)
*758 The motion to dismiss this proceeding with respect to respondents Marlborough Gallery, Inc. and Marlborough A. G. is denied. We hold that this proceeding is one which relates to the affairs of a decedent, and the administration of his estate. Therefore this court has full legal and equitable jurisdiction to hear and dispose of this matter in its entirety. (N. Y. Const., art. VI, § 12, subds. d, e; SOPA 201, subds. 1 and 2).
This result, plainly encouraged and intended by the draftsmen of the Constitution and by the Legislature, will serve the ends of justice by avoiding fragmentation of a single litigation between the Surrogate’s Court and the Supreme Court, a fragmentation which would require duplication of factual proof and legal exposition in one court involving executors only and in the other court involving contractors with executors. (See Matter of Raymond v. Davis, 248 N. Y. 67, 72.)