OPINION OF THE COURT
Richard C. Delin, J.
This is a proceeding by the executors to evict tenants from realty owned by the estate following a termination of a lease in order that a title closing may be had pursuant to a contract of sale dated April 24, 1980.
The executors allege that the lease expired on June 30, 1980 and that on May 1,1980 the tenants were informed by letter of the contract of sale and that they were expected to vacate the premises by July 1, 1980. On July 1, 1980, the tenant (All Craft) refused to vacate before August 1,1980, claiming hardship in relocating their entire business operation to a new location. The schedule of title closing was thereupon adjourned to August 15,1980. Again on August 1, All Craft refused to surrender until August 15, thereby causing another postponement of the closing to August 21, 1980. Finally cin August 20, the tenant refused to vacate or to give any firm date when they might do so causing an indefinite postponement of the closing.
*899 On August 20, a letter “presumably” giving 30-day notice to the tenant to surrender was served and summary proceedings thereafter commenced on September 17, 1980 in the First District Court. The proceeding was subsequently dismissed on the basis of an inadequate 30-day notice required under section 232-b of the Real Property Law.
The executors claim that the present situation threatens real hardship and loss to the estate since the purchasers under the contract have the right to cancel if title was not conveyed before October 1, 1980. More importantly, a mortgage on the premises has matured and is due and payable and extensions have been obtained in contemplation of the sale. Failure to sell the property may result in foreclosure of the mortgage and serious loss to the estate. The executors also allege that the sale of the premises is necessary to facilitate the administration and winding up of this estate.
All Craft’s major argument is that the sole and exclusive jurisdiction to recover the possession of real property is provided for under RPAPL 701 and that the Surrogate’s Court is not one of those courts listed therein.
At least three previously reported decisions have addressed the specific question of this court’s jurisdiction to evict. In Matter of Desotelle (143 Misc 732) the court declined jurisdiction without any analysis stating that it had no such power under section 40 of the Surrogate’s Court Act (presently SCPA 201). Conversely, Surrogate Wingate in Matter ofBurstein (153 Misc 515) concluded he had such power under the same section and again without any analysis or extended comment. In Matter of Henry (48 Misc 2d 320) the Surrogate declined jurisdiction citing RPAPL 701, presumably on the theory that it was not one of the listed courts.
Ostensibly the same argument could be made that the Supreme Court, not being one of those listed in RPAPL 701 (subd 1), does not have jurisdiction of summary proceedings to recover real property. Nevertheless, the Supreme Court by virtue of its unlimited general jurisdiction does have concurrent jurisdiction in such matters (Matter of Mahshie v Dooley, 48 Misc 2d 1098) which general jurisdiction is vested in the Supreme Court by the Constitution (NY *900 Const, art VI, § 7). Similarly, the Constitution gives to the Surrogate’s Court its primary basis of jurisdiction, namely “jurisdiction over all actions and proceedings relating to the affairs of decedents” (NY Const, art VI, § 12, subd d) and to “exercise such equity jurisdiction as may be provided by law” (NY Const, art VI, § 12, subd e). In implementation of this constitutional authority, SCPA 201 (subd 3) gives to the court “full and complete general jurisdiction in law and in equity to administer justice in all matters relating to the affairs of decedents”. Finally, jurisdiction conveyed by the Constitution cannot be limited by the Legislature nor by any power conferred by it (People ex rel. Mayor of City of N. Y. v Nichols, 79 NY 582, 590) and accordingly since this court has by reason of the Constitution jurisdiction over all actions and proceedings relating to affairs of decedents, its exclusion from RPAPL 701 (subd 1) is of no consequence to its exercise of jurisdiction over a proceeding to recover possession of real property which relates to the affairs of a decedent.
Before the enactment of the present Surrogate’s Court Procedure Act, the equitable powers of this court could be exercised only in a direct proceeding provided for in the former Surrogate’s Court Act (Matter of Venblow, 2 AD2d 365; Matter of Sturmer, 277 App Div 503, 509-510, revd on other grounds 303 NY 98). The Venblow case has been superseded by SCPA 202 which authorizes the Surrogate to entertain any judicial business found to be within the court’s subject matter jurisdiction regardless of the procedural form in which the matter may first appear. For instance, Matter of Maki v Ziehm (55 AD2d 454) in effect authorizes a stockholder’s derivative action in the Surrogate’s Court. Commenting on this seemingly novel approach, Professor Siegel in his Supplementary Practice Commentaries (McKinney’s Cons Laws of NY, Book 58A, SCPA 202, p 24) states that “The Maki decision stands as firm appellate support for an expansive interpretation of surrogate’s court jurisdiction when an estate has a substantial relationship to an issue otherwise alien to the ordinary business of the court” (see, also, Matter of Gebauer, 79 Misc 2d 715, affd 51 AD2d 643).
In essence, therefore, the only limitation on the exercise of this court’s jurisdiction is that it have some touchstone *901 with the affairs of the decedent (Matter of Deitch, 92 Misc 2d 942, affd 67 AD2d 839; Matter of Zalaznick, 84 Misc 2d 715). Since the subject matter of this proceeding relates to the affairs of a decedent, this court has jurisdiction to entertain it. It should be further noted that this court may transfer any proceeding pending in the District Court to this court if the subject matter deals with the affairs of a decedent (SCPA 501).
It is clearly apparent that unless this estate is aided by the court which is responsible for its administration, it may suffer irreparable injury. It does little to enhance the image of the courts to insist upon the continued and highly technical observation of fragmentary jurisdiction which is pervasive in the New York judicial system. Hopefully, as observed by Professor Siegel in his Supplementary Practice Commentaries to SCPA 201 (McKinney’s Cons Laws of NY, Book 58A, p 14), there is a tendency on the part of the appellate courts “to avoid the fragmentation of jurisdiction that would result from an inflexible approach to jurisdictional statutes”. There is no question about Professor Siegel’s observation of the “serious calendar congestion in the courts, and [the necessity for] a concomitant set of maturing notions about judicial administration and economy” (1972 Supplemental Commentaries, McKinney’s Cons Laws of NY, Book 58A, SCPA 201, p 15).
The tenant argues that even assuming subject matter jurisdiction, the determination of the Nassau County District Court that the 30-day notice was defective, results in a finding that the statutory month-to-month tenancy has not yet come to an end and therefore it is not a “holdover tenant”. However that may be, exhibit A, annexed to the affirmation and reply of one of the attorneys for the executors is a letter on the tenant’s attorneys’ letterhead stating:
“As indicated in your letter, our client became a month-to-month tenant at the expiration of the lease. As such, they have continued to pay the rent monthly. As a month-to-month tenant, our client is entitled to 30 days notice of the termination. We presume that your notice intends to terminate their tenancy as of September 30, 1980.
“All Craft Finishing plans to vacate the premises as of that date. Please accept this as notice of their intent to *902 terminate the month-to-month tenancy as of September 30, 1980.
“Until that day, our client will occupy the premises under the tenacy [sic]”.
The existence of that ..letter is not denied in a reply affirmation, the argument merely being made that the service of a new 30-day notice on September 19, 1980, somehow cancels the effect of the attorneys’ letter terminating the lease. However, the mere fact that the executors have sent out a new 30-day notice in an attempt to extricate themselves from a continually frustrating situation, should not be deemed to override a clear intent to surrender which is evinced by the attorneys’ letter (2 Rasch, New York Landlord and Tenant, Summary Proceedings [2d ed], § § 854-856).
The papers presenting no question of fact which appear to require any hearing, the relief requested is granted and the tenant All Craft Finishing, Inc. and/or Fire Burglary Instruments, Inc., is directed to vacate the premises known as 999A Stewart Avenue, Garden City, New York, within 10 days of a service of a copy of the order to be made hereon.